# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAYLE MARIE MEDEIROS,<br><br>       Petitioner,<br><br>    v.<br><br>RON RACKLEY,<br><br>       Respondent. | Case No. 1:16-cv-01644-SAB-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO CLOSE CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner and Respondent have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 7, 8).

## I.

## BACKGROUND

On January 3, 2013, Petitioner was convicted after a jury trial in the Tuolumne County Superior Court of first-degree residential burglary and bringing a controlled substance into a jail. (CT[1] 30, 32). Petitioner was sentenced to an imprisonment term of eleven years. (CT 42). On July 29, 2014, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Medeiros, No. F066731, 2014 WL 3729342, at *1 (Cal. Ct. App. July 29, 2014).

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged as Document No. 13 by Respondent on June 14, 2017. (ECF No. 33).

Thereafter, Petitioner filed a state petition for writ of habeas corpus in the Tuolumne County Superior Court, which denied the petition on February 10, 2015. (LDs[2] 3, 4). Petitioner's subsequent "Petition to Amend Habeas Corpus" was denied by the Tuolumne County Superior Court on April 22, 2015. (LDs 5, 6). Petitioner's third state habeas petition filed in the Tuolumne County Superior Court was denied on March 11, 2016. (LDs 7, 8). Petitioner filed a state habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition on June 9, 2016. (LDs 9, 10). Petitioner then filed a state habeas petition in the California Supreme Court, which denied the petition on September 14, 2016. (LDs 11, 12).

On October 31, 2016, Petitioner filed the instant federal petition for writ of habeas corpus in this Court. (ECF No. 1). In the petition, Petitioner raises the following claims for relief: (1) abuse of process, undisclosed charges, fabrication of charges without arraignment; (2) ineffective assistance of counsel; (3) police misconduct; (4) prosecutorial misconduct; and (5) excessive fine and disproportionate sentence. Respondent has filed an answer, and Petitioner has filed a traverse. (ECF Nos. 32, 38, 39).

## II.

## STATEMENT OF FACTS[3]

### *I. Prosecution Case*

Melody Jo Timmons testified that at approximately 5:00 p.m. on October 20, 2012 (October 20), she was outside the Tuolumne Market in Tuolumne waiting for her niece, Andrea, to arrive and give her a ride, when she saw appellant, who she had known for approximately 10 to 12 years, "maybe longer," walking through the store parking lot.[4] Appellant "caught [Timmons] and pulled [her] aside," and the two spoke for "several minutes," during which time appellant showed Timmons some photographs on her (appellant's) cell phone of Andrea and two of Timmons's sons.

At some point, Timmons began walking the approximately one to one-and-one-half-mile distance to her house, and while she was walking, "tribal security" picked her up and drove her to her brother's residence. Thereafter, Andrea arrived and drove Timmons home. Upon her arrival, she saw that the front door was "slightly wedged open" and the "trimming on the inside" of the door was "broke[n] and chipped." She went inside and discovered that some of her property

---

[2] "LD" refers to the documents lodged by Respondent on February 16, 2017 and June 14 and 19, 2017. (ECF Nos. 13, 33, 35).

[3] The Court relies on the California Court of Appeal's July 29, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

[4] Except as otherwise indicated, the "Prosecution Case" portion of our factual summary is taken from Timmons's testimony.

2

was missing, viz., a mirror, a piece of furniture with "three compartment-like little shelves,"[5] and boxes containing clothes.

At about the time Timmons noticed her door was open, Andrea was in the process of backing her vehicle out of the driveway, at which point appellant arrived in a truck, along with another person, and blocked Andrea from leaving. Soon thereafter, appellant "came running up to [Timmons's] house" and onto the porch. Timmons told her "get off [the] porch," and appellant yelled something like " 'I know you got my phone,' " and demanded that Timmons return it. Appellant also "swore up and down that she was going to go in [the] house and get her phone." She asked Timmons, " 'Where is your purse?' " and "acted like she was going to ... use ... physical force." Timmons ordered appellant to leave. At some point thereafter, Timmons called the Tuolumne County Sheriff's Department and "turned [appellant] in for ... accusing [Timmons] of stealing [appellant's] phone."

Tuolumne County Deputy Sheriff Jeff Gempler testified to the following: After being dispatched at 9:38 p.m., on October 20, he made contact with appellant, who, along with Mike Flynn, was sitting in a pickup truck parked approximately 30 yards from Timmons's house. Appellant was sitting in the passenger seat. She told the deputy that she had been "hanging out" with Timmons earlier that day at Tuolumne Market. At one point, appellant left her cell phone near Timmons and went to use the bathroom. When she returned, Timmons and the phone were gone. Shortly after speaking with appellant, Gempler spoke with Timmons. Timmons told the deputy that she came home from the store to find her front door, which had been closed when she left the house, "wide open." She soon thereafter discovered that missing from her house were the tote, "a box ... or boxes of clothing," and a "white tote."[6]

While he was speaking with appellant, Gempler looked into the bed of the truck and saw a saddle, one or two boxes of clothing, and the tote. After speaking with Timmons, and thinking that he had just seen a tote like the one she described in the bed of the truck, he brought Timmons over to the truck and showed her the tote. Upon seeing it, Timmons stated, " 'That's mine.' " Timmons also said the boxes of clothing in the truck did not belong to her.

There was a bottle of ketchup inside the tote that was not visible before Gempler removed the tote from the truck. Before Gempler pulled the tote out of the truck bed, Timmons "indicate[d], 'There is a bottle of ketchup in there[.]' "

With Timmons's permission, Gempler searched her house for appellant's cell phone. He did not find it.

Timmons testified she did not put the tote in the truck and she did not give appellant or anyone else permission to take property from her house. When asked if any of her friends or relatives put the tote in the truck, Timmons responded, "Not that I—I don't know. No. But it could possibly be."

## II. Defense Case

Appellant, the sole defense witness, testified to the following: On October 20, she was living in Tuolumne but was in the process of moving to Amador County. She had packed her belongings and had arranged for Mike Flynn to come to Tuolumne to pick her up.

---

[5] This item is generally referred to throughout the testimony as the "tote." We will refer to it by that name.
[6] The "white tote" is a different item than the three-drawer piece we refer to as the tote.

Prior to Flynn's arrival, appellant went to Tuolumne Market, and as she was coming out of the store she encountered Timmons, her former sister-in-law, who she had known for approximately 30 years. Appellant had pictures of Timmons's children on her cell phone, and as the two sat on the ground in a breezeway by the store, appellant showed the pictures to Timmons. Eventually, Timmons said she had to leave, and appellant, who had laid her phone on the ground, said goodbye and went to use a public bathroom, at which point she realized she did not have her phone. Appellant thought to herself, " '[Timmons] has my phone,' " and went back to where she and Timmons had been sitting. Timmons, however, was gone and appellant could not find her phone. At that point it was approximately 7:55 p.m.

Appellant walked to the Tuolumne Apartments, located "right next to the store," where an acquaintance lived, and waited in that person's apartment for Flynn to arrive. Danielle Hawn, who was in the process of moving into that apartment, was also there. Flynn arrived at approximately 8:35 p.m., and after they "sat and ... socialized," Flynn and appellant "took [Hawn] up Tuolumne Road to pick up [her] belongings," which she had "stashed on the side of the road." After that was accomplished, Flynn and appellant "dropped [Hawn] off," and Flynn then drove appellant to her home, where she "got [her] ... clothes and stuff." Appellant "kind of lifted up" her belongings to Flynn, who put the items in the truck bed. Appellant never climbed up into the truck bed. When they were finished, at approximately 10:00 p.m., Flynn, at appellant's request, drove appellant to Timmons's house so appellant could retrieve her phone.

When they arrived, appellant approached Andrea, who was in her car outside the house, and asked her to help get appellant's phone back from Timmons. Andrea rolled up her window and tried to back up, but the pickup was in her way.

Timmons came out on the porch, and appellant walked toward her. Appellant "might have" gone up on the porch. Appellant said she needed her phone, but Timmons denied having it. Timmons was "combative," and appellant "got scared." Andrea had called tribal security and appellant went back to the truck to wait for them because she thought they would help her recover her phone.

At that point, Flynn began to back up the truck to let Andrea leave, and Timmons "came down" and began banging on the truck, telling appellant and Flynn to leave. She then climbed into the bed of the truck, where she was "screaming" and "banging stuff around." Flynn "turned [the truck] around" and began driving away from the house, in an effort to "get [Timmons] out of the back of truck," at which point Timmons "got out of the truck." Flynn then parked the truck and shortly thereafter tribal security arrived, followed a short time later by Deputy Gempler. At that point, Timmons was "screaming" that the tote was in the truck.

Appellant was not in Timmons's house on October 20, and had not been "in that house in months." She did not steal the tote.

Medeiros, 2014 WL 3729342, at *1–3 (footnotes in original).

///

///

///

4

# III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 (2000). Petitioner asserts that she suffered violations of her rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of Tuolumne County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); <u>Harrington v. Richter</u>, 562 U.S. 86, 97–98 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70–71 (2003); <u>Williams</u>, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Lockyer</u>, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id.</u> In addition,

the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. <u>Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009) (quoting <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008)); <u>Panetti v. Quarterman</u>, 551 U.S. 930 (2007); <u>Carey v. Musladin</u>, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. <u>Musladin</u>, 549 U.S. 70; <u>Wright</u>, 552 U.S. at 126; <u>Moses</u>, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412–13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Id.</u> If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411; <u>see also</u> <u>Lockyer</u>,

1    538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists
2    could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."
3    Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the
4    correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If
5    the Court determines that the state court decision is objectively unreasonable, and the error is not
6    structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious
7    effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

8        The court looks to the last reasoned state court decision as the basis for the state court
9    judgment. Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011); Robinson v. Ignacio, 360 F.3d
10   1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially
11   incorporates the reasoning from a previous state court decision, this court may consider both
12   decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121,
13   1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the
14   state court has denied relief, it may be presumed that the state court adjudicated the claim on the
15   merits in the absence of any indication or state-law procedural principles to the contrary."
16   Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to
17   think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing
18   Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

19       Where the state court reaches a decision on the merits but provides no reasoning to
20   support its conclusion, a federal habeas court independently reviews the record to determine
21   whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.
22   Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo
23   review of the constitutional issue, but rather, the only method by which we can determine
24   whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While
25   the federal court cannot analyze just what the state court did when it issued a summary denial,
26   the federal court must review the state court record to determine whether there was any
27   "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This court "must
28   determine what arguments or theories ... could have supported, the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF CLAIMS

### A. First Ground for Relief

In her first ground for relief, Petitioner asserts multiple sub-claims, including: (1) inadequate notice of her criminal charges; (2) detention without bail; and (3) unlawful collusion between defense counsel and the prosecution.[7] (ECF No. 1 at 4, 10–11). Respondent argues that Petitioner's first ground for relief is unexhausted, and in any event, fails to state a colorable claim. (ECF No. 32 at 26).

The claims in Petitioner's first ground for relief were not presented as independent claims to the California Supreme Court. Rather, the issues were incorporated in Petitioner's ineffective assistance of counsel claims. (LD 11). Petitioner's first ground for relief was "not fairly present[ed] . . . to the state court when [s]he merely discussed it as one of several issues which were handled ineffectively by [her] trial and appellate counsel." Rose v. Palmateer, 395 F.3d 1108, 1112 (9th Cir. 2005). Therefore, Petitioner's first ground for relief is unexhausted.[8] However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (adopting the standard set forth in Granberry v. Greer, 481 U.S. 129, 135 (1987)).

### 1. Inadequate Notice of Criminal Charges

Petitioner alleges that she was received into the Tuolumne County jail on October 20, 2012, and appeared at five court hearings on November 2, 2012; November 13, 2012; December 17, 2012; December 31, 2012; and January 2, 2013. Petitioner asserts that she did not have notice

---

[7] The Court notes that in the first ground for relief, Petitioner also refers to ineffective assistance of trial and appellate counsels and prosecutorial misconduct. (ECF No. 1 at 10). The Court will address these issues separately in sections IV(B) and IV(D), infra.

[8] A petitioner in state custody who is proceeding with a petition for writ of habeas corpus generally must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

and was not informed of the nature of her criminal charges, and that she was not arraigned on the charges. Petitioner also appears to assert that defense counsel and the prosecution stipulated to "surprise" burglary and heroin charges the day of trial. (ECF No. 1 at 10).

The Ninth Circuit has held:

> [I]t is "clearly established" that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. To satisfy this constitutional guarantee, the charging document need not contain a citation to the specific statute at issue; the substance of the information, however, must in some appreciable way apprise the defendant of the charges against him so that he may prepare a defense accordingly.

Gautt v. Lewis, 489 F.3d 993, 1004 (9th Cir. 2007).

The record before the Court establishes that on October 23, 2012, a criminal complaint against Petitioner was filed in the Tuolumne County Superior Court. (CT 5). On November 2, 2012, after a preliminary examination, the complaint was deemed an information and Petitioner was held to answer. (CT 15). The complaint deemed information charged Petitioner with the following offenses: first-degree residential burglary, in violation of California Penal Code section 459 (count I); possession of a controlled substance (heroin), in violation of California Penal Code section 11350(a) (count II); and bringing drugs into a jail, in violation of California Penal Code section 4573 (count III). (CT 10–11).

The preliminary examination was held on November 2, 2012, and Petitioner was present in court. Deputy Jeff Gempler testified as to the allegations in the complaint. (CT 16; RT[9] 4–15). Even if, as Petitioner appears to argue, defense counsel failed to inform Petitioner of the contents of the charging document, Petitioner was present during the preliminary examination testimony, which provided adequate notice of Petitioner's charges. See Sheppard v. Rees, 909 F.2d 1234, 1236 n.2 (9th Cir. 1989) ("An accused could be adequately notified of the nature and cause of the accusation by other means—for example, a complaint, an arrest warrant, or a bill of particulars. . . . [or] during the course of a preliminary hearing.").

---

[9] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on June 13, 2017. (ECF No. 33).

The record refutes Petitioner's allegation that defense counsel and the prosecution stipulated to "surprise" burglary and heroin charges the day of trial. At the preliminary examination, Deputy Gempler testified that Melody Timmons reported items missing from her house, including a "three-shelf plastic thing," after she returned from the market to find her front door open. (RT 6). The plastic "tote" was found in the back of a pickup truck that was parked near the long driveway of Ms. Timmons's residence. Petitioner was seated in the passenger seat of the truck. (RT 5–7). Subsequently, Deputy Gempler transported Petitioner to the jail. Gempler testified that as Petitioner got out of his vehicle at the sally port, he found "near the threshold of the [vehicle] door . . . a piece of binderish paper with a brownish substance on it." (RT 9). The item was not in the vehicle before Petitioner was placed in the vehicle, and Gempler testified that the substance tested positive for heroin on a field kit. (RT 10). Gempler also testified that as Petitioner was being processed at the jail, officers "located a sandwich baggie under [Petitioner's] left breast and inside the sandwich baggie was marijuana." (RT 10). The preliminary examination testimony provided adequate notice of the burglary and heroin possession charges on November 2, 2012, which was two months prior to Petitioner's trial. Moreover, on the first day of trial, the court dismissed the heroin possession charge (count II) on the prosecution's motion. (CT 21; RT 39).

"Arraignment is not a procedure required by the due process clause of the fifth amendment." Valenzuela-Gonzalez v. U.S. Dist. Court, 915 F.2d 1276, 1280 (9th Cir. 1990). "'Vacating convictions for lack of formal arraignment proceedings is predicated on the existence of possible prejudice. Garland v. Washington, 232 U.S. 642, 34 S. Ct. 456, 58 L. Ed. 772 (1914).' What is necessary is that defendant know what he is accused of and be able adequately to defend himself." United States v. Romero, 640 F.2d 1014, 1015 (9th Cir. 1981) (quoting United States v. Rogers, 469 F.2d 1317, 1317-18 (5th Cir. 1972)). Here, counsel waived formal arraignment and entered a plea of not guilty. (RT 19). Petitioner had adequate notice of the charges against her through the preliminary examination testimony, the assistance of appointed counsel, and a jury trial with the opportunity to defend herself. Petitioner does not demonstrate what prejudice she suffered as a result of defense counsel waiving formal arraignment.

As it is "perfectly clear" that Petitioner does not raise a colorable federal claim with respect to the alleged lack of adequate notice of her criminal charges, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## 2. Bail

Petitioner asserts that her due process rights were violated because she did not receive bail, directing the Court's attention to five state court hearings held on November 2, 2012; November 13, 2012; December 17, 2012; December 31, 2012; and January 2, 2013. (ECF No. 1 at 10). Petitioner's claim refers to her *pretrial* bail.

"In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Murphy v. Hunt, 455 U.S. 478, 481 (1982) (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396, (1980)). The Supreme Court has held that "[i]t would seem clear that under this general rule [a petitioner's] claim to *pretrial* bail was moot once he was convicted." Hunt, 455 U.S. at 481. Thus, upon Petitioner's conviction, her pretrial bail claim has become moot.

Moreover, Petitioner does not establish that her claim falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. This exception is "limited to the situation where . . . (1) the challenged action [i]s in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again." Hunt, 455 U.S. at 482 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)). A "mere physical or theoretical possibility" is not sufficient to satisfy the test. "[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Hunt, 455 U.S. at 482. Here, Petitioner makes no allegations whatsoever that she will be subjected to the same action again.

As it is "perfectly clear" that Petitioner does not raise a colorable pretrial bail claim, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## 3. Collusion Between Defense Counsel and Prosecution

Petitioner appears to assert that defense counsel unlawfully entered a stipulation with the

prosecution to convert an uncharged offense for marijuana possession into a heroin charge, resulting in an "illegally obtained 'heroin' conviction." (ECF No. 1 at 11). Petitioner also asserts that defense counsel colluded with the prosecution to exclude Michael Flynn from testifying, which thwarted an acquittal on the burglary charge. (Id.).

As discussed above, the complaint deemed information charged Petitioner with both possession of a controlled substance (i.e., heroin) in count II and bringing drugs into a jail in count III. (CT 11). On the first day of trial, the court dismissed the heroin possession charge (count II) on the prosecution's motion. (CT 21; RT 39). No evidence of heroin was presented at trial. The only drug evidence presented at trial concerned marijuana. (RT 109–11, 132–34, 175–76). The parties also made the following stipulation:

> 1) The parties agree that the substance found by SGT Erickson in a sandwich baggie on the person of Gayle Marie Medeiros is Marijuana.
> 2) .36 grams of marijuana is a usable quantity.
> 3) Gayle Marie Medeiros knew of the substance's nature or character as a controlled substance.

(CT 26). In his opening statement, the prosecutor described the offense for which Petitioner was charged as "bringing marijuana into the jail." (RT 58). During closing argument, the prosecutor noted that the parties stipulated that the substance "was, in fact, marijuana, and it was in a usable amount." (RT 229). Therefore, Petitioner was necessarily convicted of count III based on the marijuana evidence, and the record refutes Petitioner's allegation that defense counsel and the prosecution unlawfully colluded to covert an uncharged marijuana offense into a heroin charge or that Petitioner was convicted of a heroin offense.

In support of her assertion that defense counsel and the prosecution colluded by working on a stipulation to exclude Mr. Flynn from testifying, Petitioner cites to pages 32 and 35 of the Reporter's Transcript. (ECF No. 1 at 11). However, the stipulation referenced at that point in the transcript concerned the marijuana found by Sergeant Eriksen on Petitioner's person. (RT 32–33). The subsequent discussion regarding Mr. Flynn concerned whether he would comply with the subpoena and show up to testify. Defense counsel informed the court, "We mailed him a subpoena, and then after he received it, he stopped cooperating, so we're not 100 percent certain that he'll be here." (RT 35). Defense counsel anticipated that Mr. Flynn would testify on the

second day of trial, but noted that "if we don't hear from him today, obviously, we need to go to Plan B." (RT 36). There was no stipulation to exclude Mr. Flynn from testifying.

As it is "perfectly clear" that Petitioner does not raise a colorable federal claim regarding alleged collusion between defense counsel and the prosecution, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## B. Ineffective Assistance of Counsel

In her first, second, and third grounds for relief, Petitioner asserts ineffective assistance of counsel for numerous alleged deficiencies. (ECF No. 1 at 10–11, 14–18). Respondent argues that the state courts' denial of Petitioner's ineffective assistance of counsel claims were not contrary to or an unreasonable application of Supreme Court precedent and were based on a reasonable determination of facts. (ECF No. 32 at 30).

Petitioner raised ineffective assistance of counsel claims in the Tuolumne County Superior Court, which denied the claims in a reasoned opinion. (LDs 7, 8). Ineffective assistance of counsel claims also were raised in the California Court of Appeal and the California Supreme Court, which summarily denied the claims. (LDs 9–12). As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Tuolumne County Superior Court. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991)).

In denying Petitioner's ineffective assistance of counsel claims, the Tuolumne County Superior Court stated:

> To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) it is reasonably probable that a more favorable result would have been reached absent the deficient performance. [Citation.] A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.'" (*People v. Jones* (2013) 217 Cal.App.4th 735, 746-747.) It is the defendant's burden in a petition for writ of habeas corpus to show that he or she was denied effective assistance of counsel and is entitled to relief. (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

> Here, Petitioner focuses solely on the first prong of this test. Petitioner alleges numerous instances where her trial counsel failed to object to various arguments of the prosecutor or rulings of the Court. Nowhere does Petitioner argue how

these alleged deficiencies in the performance of her counsel would have affected the outcome of the trial. The principal issue on direct appeal was the sufficiency of the evidence to support the verdicts. The Court of Appeal concluded that substantial evidence supported the defendant's convictions. Nothing in any of Petitioner's arguments compels a different result.

To address the arguments in the order they were made:

(1)    Petitioner first argues her counsel failed to object to the proceedings against her. Petitioner fails to show how the proceedings were in any way improper or illegal.

(2)    Petitioner argues material eyewitnesses were improperly excluded. She does not identify who the witnesses were, or what they would have said.

(3)    She argues counsel was ineffective for failing to call a witness, Michael Flynn. The petition itself discloses, however, that her trial counsel told Petitioner's appellate counsel that he did not call Mr. Flynn because he would have given incriminating evidence against Petitioner.

(4)    Petitioner argues her counsel failed to object to the prosecution's "sole witness, Deputy Jeff Gempler's hearsay testimony" about one Melody Timmons. The Opinion of the Court of Appeal shows that Deputy Gempler was not the only witness, and that Melody Timmons, the source of the alleged hearsay statements did testify at trial.

(5)    She argues her counsel failed to investigate Petitioner's thirty alibi witnesses. Petitioner does not disclose who these witnesses were, or what testimony they would have provided.

(6)    Petitioner next argues her counsel failed to object to the prosecutor's use of a "PowerPoint" presentation in closing argument. There is nothing in the record provided that supports this assertion.

(7)    Petitioner also argues her counsel failed to object to the prosecutor's uses of "false, misleading or inconsistent evidence." Petitioner's citation to the record fails to support her claim. Her argument that the prosecutor's reference to certain jurors having been victims of burglary in the past meant that he was arguing that Petitioner was the one who committed those burglaries is patently absurd.

(8)    Petitioner argues her counsel made factual mistakes in his closing argument, which "accidently-on-purpose" incriminated Petitioner. This argument finds no support in the record Petitioner has provided and is mere speculation as to counsel's intent.

(9)    Petitioner argues that trial counsel "failed to dismiss all proceedings as unlawful or illegal and devoid of Constitutional Authority." Clearly, defense counsel had no ability to unilaterally dismiss the proceedings against Petitioner. Even had counsel made a motion to dismiss, Petitioner's explanation of why the proceedings were "unlawful or illegal" would have had no chance for success on the merits. Trial counsel was not required to file a motion that would be without merit.

(10) Petitioner argues her trial counsel failed to object to the prosecutor's "improper" questioning of the victim of the burglary. This Court has examined the questions Petitioner alleges were "improper" and can find nothing improper about them.

(11) Petitioner contends trial counsel failed to object to the Deputy Sheriff's use of "contradictory and false testimony." If a party believes that testimony is "false" or "contradictory," that is a subject for argument or impeachment. It is not a basis to object to the admissibility of otherwise competent testimony.

(12) Petitioner argues her counsel failed to suppress certain evidence (a "tote"). The record reflects that the tote was found in plain view in the open bed of a pick-up truck. There was nothing to indicate Petitioner had any standing to object to a search of the truck. Petitioner has failed to show that a motion to suppress would have been meritorious.

(13) Petitioner next contends that her counsel failed to suppress the evidence of heroin that Petitioner was convicted of bringing in to the jail. The evidence at trial revealed, however, that when Petitioner was brought in to the jail, she had a baggie of marijuana hidden under her left breast. This evidence was sufficient to support the charge of bringing a drug into the jail, irrespective of any other evidence. Further, the record Petitioner has provided shows that no evidence of heroin was submitted to the jury. (See, Attachment A, letter dated 1/12/14.)

(14) Petitioner contends the prosecutor improperly "vouched" for Deputy Gempler and her trial counsel failed to object. Petitioner misconstrues the argument the prosecutor was making. The argument in question was that the jury should believe Deputy Gempler's testimony about the statements Melody Timmons made at the time of the events, as opposed to her trial testimony, because Deputy Gempler recorded them in his report. The argument was proper.

(15) Petitioner argues that her counsel failed to object to certain jury instructions. The instructions, however, were all pattern CALCRIM instructions. Petitioner fails to show why they were improper, or how the result of the trial would have been altered if any of them had not been given.

(16) Next, Petitioner argues her counsel failed to object and "permitted Prosecutor to 'label' Petitioner unfairly." She then sets forth almost the entire closing argument of the Prosecutor, without any explanation of how or what she was "labeled."

(17) Petitioner contends her trial counsel "failed to object and Agreed to enforce prosecution upon Petitioner for Infraction Marijuana to be increased and modified into 4573 Penal Code, bringing drugs into jail." While the argument is not entirely clear, it appears Petitioner contends that Penal Code section 4573 would not apply to marijuana. She is wrong.

(18) Petitioner contends her trial counsel failed to "interview eyewitness Mr. Flynn nor prepare Mr. Flynn for testifying." A letter supplied by Petitioner as Attachment A, however, clearly states, "As I said in my last letter, Mr. Price [trial counsel] also told me that Mr. Flynn incriminated you in the

theft of the tote/stand, and therefore was not a suitable witness for the defense." (See, Attachment A, letter dated 1/12/14.)

(19) Finally, Petitioner argues her trial counsel "failed to investigate and agreed to the Use of Prior Convictions." This argument then devolves into a handwritten series of assertions that become increasingly confusing. The Opinion of the Court of Appeal in this matter shows that Petitioner had a prior serious or violent felony conviction which was alleged as a "strike." The Opinion goes on to note that Petitioner admitted the strike. It was absolutely proper for counsel to recommend admitting the strike to prevent it from being submitted in evidence to the jury.

For the foregoing reasons, this Court finds that Petitioner has failed to carry her burden of showing that her trial counsel's performance was deficient and fell below an objective standard of reasonableness, or that it is reasonably probable that a more favorable result would have been reached absent the alleged deficiencies in her trial counsel's performance.

(LD 8 at 2–6).

1. *Strickland* Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citing Strickland, 466 U.S. at 690). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

///

16

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

2. Eyewitnesses

Petitioner asserts that trial counsel was ineffective for failing to investigate, interview, and subpoena eyewitnesses. Petitioner further alleges that counsel made false statements to the court that there were not any eyewitnesses and excluded defense witnesses from testifying without consultation with or authorization from Petitioner. (ECF No. 1 at 14–15). In denying Petitioner's ineffective assistance of counsel claim based on counsel's failure to investigate, interview, and subpoena eyewitnesses, the Tuolumne County Superior Court stated: "Petitioner

argues material eyewitnesses were improperly excluded. She does not identify who the witnesses were, or what they would have said. . . . She argues her counsel failed to investigate Petitioner's thirty alibi witnesses. Petitioner does not disclose who these witnesses were, or what testimony they would have provided." (LD 8 at 3).

In support of her assertion that defense counsel requested exclusion of material and percipient eyewitnesses and denied defense witnesses existed, Petitioner cites to pages 4, 15, and 32 of the Reporter's Transcript. (ECF No. 1 at 11). At the preliminary examination, defense counsel moved to exclude witnesses. (RT 4). As noted by Respondent, California Penal Code section 867 authorizes either party to move to exclude witnesses from the courtroom before a preliminary hearing begins so that each witness testifies without influence from other witnesses' testimony. (ECF No. 32 at 29) (citing Geders v. United States, 425 U.S. 80, 87 (1976); People v. Pompa-Ortiz, 27 Cal. 3d 519, 524–25 (Cal. 1980)). Additionally, defense counsel did not deny the existence of defense witnesses, but merely declined to present witnesses at the preliminary examination. (RT 15). The Court finds that the record does not support Petitioner's allegations that trial counsel made false statements to the court that there were not any eyewitnesses and excluded defense witnesses from testifying.

Additionally, Petitioner fails to show that counsel's failure to investigate, interview, and subpoena other witnesses to the offense prejudiced her defense. Petitioner did not provide any affidavits from the alleged witnesses to the offense to the state courts or provide any information about the nature of their purported testimony. See Andrews v. Davis, 866 F.3d 994, 1042 (9th Cir. 2017). Petitioner does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's failure to investigate, interview, and subpoena eyewitnesses was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### 3. <u>Heroin</u>

Petitioner asserts that trial counsel was ineffective for failing to object to false evidence of heroin and failing to request dismissal of the heroin charge after test results returned negative for heroin. (ECF No. 1 at 14). In denying Petitioner's ineffective assistance of counsel claim based on defense counsel's failure to suppress evidence of heroin, the Tuolumne County Superior Court stated:

> Petitioner next contends that her counsel failed to suppress the evidence of heroin that Petitioner was convicted of bringing in to the jail. The evidence at trial revealed, however, that when Petitioner was brought in to the jail, she had a baggie of marijuana hidden under her left breast. This evidence was sufficient to support the charge of bringing a drug into the jail, irrespective of any other evidence. Further, the record Petitioner has provided shows that no evidence of heroin was submitted to the jury. (See, Attachment A, letter dated 1/12/14.)

(LD 8 at 4–5).

As discussed in section IV(A)(3), *supra*, the trial court dismissed the heroin possession charge on the prosecution's motion and no evidence of heroin was presented at trial. Therefore, under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, <u>Donald</u>, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim with respect to the heroin charge and evidence was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### 4. <u>Tote</u>

Petitioner asserts that trial counsel was ineffective for failing to object to the admission of the illegally obtained tote to support the burglary charge. (ECF No. 1 at 14). In denying Petitioner's ineffective assistance of counsel claim based on counsel's failure to suppress evidence of the tote, the Tuolumne County Superior Court stated:

Petitioner argues her counsel failed to suppress certain evidence (a "tote"). The record reflects that the tote was found in plain view in the open bed of a pick-up truck. There was nothing to indicate Petitioner had any standing to object to a search of the truck. Petitioner has failed to show that a motion to suppress would have been meritorious.

(LD 8 at 4).

To establish ineffective assistance for counsel's failure to litigate a Fourth Amendment issue, Petitioner must show: (1) the overlooked motion to suppress would have been meritorious, and (2) there is a reasonable probability the jury would have reached a different verdict absent introduction of the unlawful evidence. Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003). See Styers v. Schriro, 547 F.3d 1026, 1030 n.5 (9th Cir. 2008) ("Generally, a defendant claiming ineffective assistance of counsel for failure to file a particular motion must not only demonstrate a likelihood of prevailing on the motion, but also a reasonable probability that the granting of the motion would have resulted in a more favorable outcome in the entire case.").

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236 (1968) (citing Ker v. California, 374 U.S. 23, 42–43 (1963); United States v. Lee, 274 U.S. 559 (1927); Hester v. United States, 265 U.S. 57 (1924)). This "plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." Illinois v. Andreas, 463 U.S. 765, 771 (1983).

Here, Deputy Gempler had a right to be in the position to have a view of the tote in the bed of Mr. Flynn's truck. After Gempler spoke with Ms. Timmons regarding items missing from her house, Gempler brought Timmons over to the truck to show her the tote. Timmons informed Gempler that the tote was hers. Thus, Gempler had probable cause to suspect that the tote was connected with criminal activity.

Additionally, Petitioner does not establish that she had standing to raise a Fourth Amendment claim.

[I]n order to claim the protection of the Fourth Amendment, a defendant must

20

demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; i.e., one which has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

Minnesota v. Carter, 525 U.S. 83, 88 (1998). The Supreme Court has held that passengers do not have standing to assert a Fourth Amendment challenge to the seizure of incriminating evidence from an automobile when "[t]hey asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized." Rakas v. Illinois, 439 U.S. 128, 148 (1978). Here, Petitioner does not assert an interest in the tote or Flynn's truck.

Based on the foregoing, any motion to suppress the tote would not have been meritorious. Thus, under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's failure to object to admission of the tote was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

5. Michael Flynn

With respect to Michael Flynn, Petitioner asserts that trial counsel was ineffective for: (1) requesting exclusion of Mr. Flynn as a witness without consultation with or authorization from Petitioner; (2) failing to call Mr. Flynn to testify despite Flynn appearing at court to do so; (3) failing to object to use of Flynn's hearsay statements at trial; (4) making repeated false statements on the record in order to prevent Mr. Flynn from testifying; and (5) making deliberate false statements to appellate counsel regarding the nature of Mr. Flynn's testimony. (ECF No. 1 at 15–17).

In denying Petitioner's ineffective assistance of counsel regarding Michael Flynn, the Tuolumne County Superior Court stated:

[Petitioner] argues counsel was ineffective for failing to call a witness, Michael Flynn. The petition itself discloses, however, that her trial counsel told Petitioner's appellate counsel that he did not call Mr. Flynn because he would have given incriminating evidence against Petitioner.

. . .

Petitioner contends her trial counsel failed to "interview eyewitness Mr. Flynn nor prepare Mr. Flynn for testifying." A letter supplied by Petitioner as Attachment A, however, clearly states, "As I said in my last letter, Mr. Price [trial counsel] also told me that Mr. Flynn incriminated you in the theft of the tote/stand, and therefore was not a suitable witness for the defense." (See, Attachment A, letter dated 1/12/14.)

(LD 8 at 3, 5).

In support of the ineffective assistance of counsel claim regarding Michael Flynn, Petitioner relies on a sworn declaration provided by Mr. Flynn and attached to the petition. (ECF No. 1 at 52–53, 324–25). However, "AEDPA also restricts the scope of the evidence that we can rely on in the normal course of discharging our responsibilities under § 2254(d)(1)." Murray v. Schriro, 745 F.3d 984, 998 (9th Cir. 2014). "AEDPA's 'backward-looking language requires an examination of the state-court decision at the time it was made. It [then logically] follows that the record under review is limited to the record in existence at that same time, *i.e.,* the record before the state court.'" Id. (alteration in original) (quoting Cullen v. Pinholster, 563 U.S. 170, 182 (2011)). Given that Mr. Flynn's sworn declaration was not provided to any of the state courts, this Court cannot consider the declaration on habeas review. See McDaniels v. Kirkland, 813 F.3d 770, 773 (9th Cir. 2015) (en banc) (holding federal habeas courts may consider the entire state-court record, including evidence that was presented to the state trial court but not to any state appellate court).

"A state court's decision is based on unreasonable determination of the facts under § 2254(d)(2)[10] if the state court's findings are 'unsupported by sufficient evidence,' if the 'process employed by the state court is defective,' or 'if no finding was made by the state court

---

[10] A different provision of AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The Ninth Circuit's "panel decisions appear to be in a state of confusion as to whether § 2254(d)(2) or (e)(1), or both, applies to AEDPA review of state-court factual findings," Murray, 745 F.3d at 1001, and the Supreme Court has not addressed the relationship between § 2254(d)(2) and (e)(1), Wood v. Allen, 558 U.S. 290, 300 (2010). However, the Court "need not address the interaction between § 2254(d)(2) and (e)(1) when the petitioner's claims fail to satisfy either provision." Atwood v. Ryan, 870 F.3d 1033, 1047 (9th Cir. 2017) (citing Murray, 745 F.3d at 1001).

at all.'" Hernandez v. Holland, 750 F.3d 843, 857 (9th Cir. 2014) (quoting Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir. 2004)). "[U]nder § 2254(d)(2), a federal court 'may not second-guess' a state court's factual findings unless 'the state court was not merely wrong, but actually unreasonable' in light of the record before it. Atwood v. Ryan, 870 F.3d 1033, 1047 (9th Cir. 2017) (quoting Taylor, 366 F.3d at 999).

Here, the state court's determination that defense counsel did not call Mr. Flynn as a defense witness because Flynn would have given incriminating evidence against Petitioner was not unreasonable under § 2254(d)(2). Although on the first day of trial defense counsel had agreed with the trial court's statement that Mr. Flynn's "testimony would be that . . . he was present with Miss Medeiros at a location where this charged burglary occurred, and that during the time that he was present with Miss Medeiros, he did not see her enter the residence," (RT 35), the record before the state court also included a January 12, 2014 letter from Petitioner's appellate counsel, which stated in pertinent part that "Mr. Price also told me that Mr. Flynn incriminated you in the theft of the tote/stand, and therefore was not a suitable witness for the defense," (LD 7 Attach. A).

Counsel's decision to not call Mr. Flynn, whose testimony counsel believed would have incriminated Petitioner, was not deficient. See Strickland, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim regarding Michael Flynn was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

6. Collusion with Prosecution

Petitioner asserts that defense counsel colluded with the prosecution to unlawfully obtain her convictions and thwart acquittal. (ECF No. 1 at 11, 14). Specifically, Petitioner alleges that defense counsel agreed to stipulate to the greater heroin charge from a lesser uncharged marijuana infraction and to exclude Michael Flynn as a witness. (Id. at 11, 15). In denying Petitioner's ineffective assistance of counsel claim for agreeing to stipulate to the greater heroin charge from a lesser uncharged marijuana infraction, the Tuolumne County Superior Court stated:

> Petitioner contends her trial counsel "failed to object and Agreed to enforce prosecution upon Petitioner for Infraction Marijuana to be increased and modified into 4573 Penal Code, bringing drugs into jail." While the argument is not entirely clear, it appears Petitioner contends that Penal Code section 4573 would not apply to marijuana. She is wrong.

(LD 8 at 5).

As discussed in section IV(A)(3), *supra*, the Court finds that the record does not support Petitioner's allegations regarding collusion. Thus, the state court's denial of Petitioner's ineffective assistance of counsel claim based on alleged collusion with the prosecution was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

7. Victims of Burglary Statement

Petitioner asserts that counsel was ineffective for gesturing at Petitioner while stating to the jury that they have been victims of burglary. (ECF No. 1 at 17). The California Supreme Court summarily denied this claim, and there is no reasoned state court decision on this claim. The Court presumes that the state court adjudicated the claim on the merits. See Johnson, 568 U.S. at 301. Accordingly, AEDPA's deferential standard of review applies, and the Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

The statement and alleged gesture were made during closing argument with respect to the credibility of Ms. Timmons' testimony. Specifically, defense counsel stated:

> The most important area where I thought the questioning of Miss Timmons kind of made sense, or we could kind of get some truth out of her, okay, is that, "When you went home and you realize that your house has been burgled, did you call the police?"
>
> "No."
>
> Well that doesn't make sense. I think if anyone, you know—they go home and your T.V. is missing and the dog is missing and everything has been thrown around your home, one of the first things you'll do is call 9-1-1. You have been a victim of a burglary, serious crime. That is not the way Miss Timmons behaved.

(RT 234). In context, counsel was attacking the credibility of the prosecution's witness and the record does not establish that this statement and alleged gesture fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's victims of burglary statement was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

8. Questioning Petitioner on Previous Conviction

Petitioner asserts that counsel was ineffective for questioning Petitioner on her previous conviction for assault with a deadly weapon. (ECF No. 1 at 17). The California Supreme Court summarily denied this claim, and there is no reasoned state court decision on this claim. The Court presumes that the state court adjudicated the claim on the merits. See Johnson, 568 U.S. at 301. Accordingly, AEDPA's deferential standard of review applies, and the Court "must determine what arguments or theories ... could have supported, the state court's decision; and

then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

"[C]riminal defendants are not entitled to a false aura of veracity when they take the stand." <u>United States v. Portillo</u>, 633 F.2d 1313, 1322 (9th Cir. 1980). "When an accused elects to become a witness and testify in his own behalf, 'his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness.'" <u>Id.</u> (quoting <u>Reagan v. United States</u>, 157 U.S. 301, 305 (1895)). California law authorizes "the use of any felony conviction which necessarily involves moral turpitude" for impeachment of witnesses in criminal cases, subject to the trial court's "discretion to exclude marginally relevant but prejudicial matter." <u>People v. Castro</u>, 38 Cal. 3d 301, 306 (Cal. 1985). California courts have held that "assault with a deadly weapon must be regarded as involving moral turpitude, and that a prior conviction for this offense may be used to impeach the testimony of a witness." <u>People v. Thomas</u>, 206 Cal. App. 3d 689, 700 (Cal. Ct. App. 1988).

Towards the end of Petitioner's direct examination, in between questions regarding how the tote came to be in Flynn's truck and why Petitioner stayed at the property after the first confrontation with Miss Timmons, the following exchanged occurred:

Q. And you have been convicted of two prior felonies, haven't you?

A. Yes.

Q. A felony 245, assault?

A. Assault with a deadly weapon, yes.

Q. What year was that?

A. 1992, April 6th, Monday.

(RT 168–69).

Petitioner has not "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689 (citation and internal quotation marks omitted). <u>See</u> <u>Boyde v. Brown</u>, 404 F.3d 1159, 1174 (9th Cir.), <u>as amended on reh'g</u>, 421 F.3d 1154 (9th Cir. 2005) (finding that counsel was not ineffective for

introducing defendant's prior crimes during direct examination of defendant when "counsel concluded that Boyde 'would be better served in meeting the question of his priors head-on and dealing with them forthrightly in front of the jury'"). Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel raising Petitioner's prior convictions on direct examination was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### 9. Misstatements

Petitioner asserts that trial counsel was ineffective for falsely stating that Petitioner was previously at Timmons's residence and falsely referring to Mr. Flynn's truck as Petitioner's. (ECF No. 1 at 18). In denying Petitioner's ineffective assistance of counsel regarding counsel's misstatements, the Tuolumne County Superior Court stated: "Petitioner argues her counsel made factual mistakes in his closing argument, which 'accidently-on-purpose' incriminated Petitioner. This argument finds no support in the record Petitioner has provided and is mere speculation as to counsel's intent." (LD 8 at 4).

Petitioner challenges defense counsel's allegedly false statement that Petitioner was previously at Ms. Timmons's residence. Specifically, defense counsel stated during closing argument:

> And also, you know, use a little common sense. You had Miss Medeiros' explanation of why she went to that house. And you've got to remember when Miss Medeiros went to that house, Miss Timmons was in the house, so she wasn't going there to burglarize her house. She was going there to get back her personal property, her cell phone. That is the only reason it makes sense on why she went back to that house.
>
> If you listen to the D.A.'s argument that she burglarized the house earlier in the day and now she is going to go back and—what? Show Miss Timmons, "Look at the stuff I stole from your home?" That doesn't make sense. There was only one logical reason for Gayle Medeiros to go back to Miss Timmons' house, and that is to get her cell phone.

(RT 231–32). Although defense counsel may have mistakenly stated that Petitioner went "back" to Ms. Timmons's house, it is clear in context that counsel was arguing Petitioner was present at Ms. Timmons's residence in order to get her cell phone and that it was unreasonable to conclude Petitioner burglarized Timmons's home earlier in the day and later returned to retrieve her phone. The record does not establish that this misstatement, which appears to have been inadvertent, fell "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.

Petitioner also challenges trial counsel's references to Mr. Flynn's truck as Petitioner's truck. During cross-examination of Ms. Timmons, defense counsel sometimes referred to the truck as Petitioner's truck. (RT 87, 89). However, after Ms. Timmons expressed her belief that Petitioner did not have a car, defense counsel clarified that Petitioner "was with Mr. Flynn. Did you ever go put that three-drawer tote inside that pickup truck?" (RT 89). Additionally, during recross-examination, defense counsel referred to the truck as Petitioner's "friend's truck." (RT 102). Although counsel referred to the truck as "your pickup" during direct examination of Petitioner, counsel immediately corrected himself and clarified that it was "Mr. Flynn's pickup truck." (RT 168). In addition, during closing argument defense counsel stated, "Her friend, Mr. Flynn, who owns the pickup truck cooperated with the police." (RT 235). Based on the foregoing, the record does not establish that defense counsel's apparently inadvertent references to the truck as Petitioner's truck fell "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, <u>Donald</u>, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's misstatements was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

*///*

1        10.  <u>Failure to Object During Prosecutor's Opening Statement</u>

2        Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor

3   introducing Petitioner as a burglar to the jury, while pointing his hand in her direction, during his

4   opening statement. (ECF No. 1 at 39). In denying Petitioner's ineffective assistance of counsel

5   regarding counsel's failure to object to the prosecutor's opening statement, the Tuolumne County

6   Superior Court stated:

7        Petitioner also argues her counsel failed to object to the prosecutor's uses of
         "false, misleading or inconsistent evidence." Petitioner's citation to the record
8        fails to support her claim. Her argument that the prosecutor's reference to certain
         jurors having been victims of burglary in the past meant that he was arguing that
9        Petitioner was the one who committed those burglaries is patently absurd.

10  (LD 8 at 4).

11       The Ninth Circuit has held that "[b]ecause many lawyers refrain from objecting during

12  opening statement and closing argument, absent egregious misstatements, the failure to object

13  during closing argument and opening statement is within the 'wide range' of permissible

14  professional legal conduct." <u>Cunningham v. Wong</u>, 704 F.3d 1143, 1159 (9th Cir. 2013)

15  (alteration in original) (quotation marks omitted) (quoting <u>United States v. Necoechea</u>, 986 F.2d

16  1273, 1281 (9th Cir. 1993)).

17       The prosecutor's allegedly improper comment during opening statement included:

18       Not too long ago, the defendant went into the home of Miss Timmons, who lives
         here in Tuolumne County, and took some items. Not very valuable items. I know
19       some of you had experienced burglaries, but this was just a tote, some jewelry, a
         mirror, or—I think a bottle of ketchup. The issue isn't the value. The issue is
20       whether or not she went into the home with the intent to commit that theft, to steal
         items.
21

22  (RT 55). The prosecutor prefaced the statement by informing the jury, "I want to just give you

23  the basic facts of what I believe the evidence is going to show you, so it is kind of a road map so

24  you don't go into this thing blind not knowing what to expect." (RT 54–55). Moreover, the

25  reference to jurors having experienced burglaries was to distinguish their experiences from

26  Petitioner's case, which involved items of little value. The statement was not an egregious

27  misstatement, and thus, trial counsel was not ineffective for failing to object.

28       Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims,

1  Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's
2  ineffective assistance claim based on trial counsel's failure to object during the prosecutor's
3  opening statement was not contrary to, or an unreasonable application of, clearly established
4  federal law. The decision was not "so lacking in justification that there was an error well
5  understood and comprehended in existing law beyond any possibility for fairminded
6  disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief
7  for ineffective assistance of counsel on this ground.

8         11. Failure to Object During Prosecutor's Closing Argument

9         Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's
10  use of the word "reasonable" fifty times in eighteen minutes during his closing argument. (ECF
11  No. 1 at 39). This claim was not presented to the California Supreme Court, and thus, is
12  unexhausted. However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted
13  claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable
14  federal claim." Cassett, 406 F.3d at 624.

15        Here, Petitioner does not demonstrate, and the Court does not find, that the prosecutor's
16  supposedly excessive use of the word "reasonable" during closing argument was improper. See
17  Ceja v. Stewart, 97 F.3d 1246, 1253 (9th Cir. 1996) (internal quotation marks omitted) (quoting
18  United States v. Baker, 10 F.3d 1374, 1415 (9th Cir. 1993)) ("Counsel are given latitude in the
19  presentation of their closing arguments, and courts must allow the prosecution to strike hard
20  blows based on the evidence presented and all reasonable inferences therefrom."). As it is
21  "perfectly clear" that Petitioner does not raise a colorable ineffective assistance of counsel claim
22  for failing to object to the prosecutor's use of the word "reasonable during closing argument, the
23  Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

24        12. Failure to Object to Prosecutor's Question to Ms. Timmons

25        Petitioner asserts trial counsel was ineffective for failing to object to the prosecutor
26  asking Ms. Timmons whether she gave Petitioner permission to take the tote from Timmons's
27  residence. (ECF No. 1 at 39). In denying Petitioner's ineffective assistance of counsel regarding
28  counsel's failure to object to the prosecutor's improper questioning of Ms. Timmons, the

Tuolumne County Superior Court stated: "Petitioner argues her trial counsel failed to object to the prosecutor's "improper" questioning of the victim of the burglary. This Court has examined the questions Petitioner alleges were 'improper' and can find nothing improper about them." (LD 8 at 4).

Petitioner does not explain on what basis counsel could have objected to the prosecutor's question, and "trial counsel cannot have been ineffective for failing to raise a meritless objection." Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005). Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on counsel's failure to object to the prosecutor's questioning of Ms. Timmons was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

13. Failure to File Appeal

Petitioner asserts that trial counsel was ineffective for failing to file an appeal when requested by Petitioner. (ECF No. 1 at 14). The California Supreme Court summarily denied this claim, and there is no reasoned state court decision on this claim. The Court presumes that the state court adjudicated the claim on the merits. See Johnson, 568 U.S. at 301. Accordingly, AEDPA's deferential standard of review applies, and the Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

Petitioner filed a notice of appeal, (CT 40), and Petitioner was represented by appellate counsel who filed an opening and reply brief on Petitioner's behalf, (LDs 16, 18). Given that Petitioner initiated her appeal and was represented by appellate counsel, she does not establish "there is a reasonable probability that . . . the result of the proceeding would have been different" had trial counsel filed her appeal. Strickland, 466 U.S. at 694. Under AEDPA's "doubly

deferential" review of ineffective assistance of counsel claims, <u>Donald</u>, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's ineffective assistance claim based on trial counsel's failure to file an appeal was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of counsel on this ground.

### 14. Appellate Counsel

Petitioner asserts that appellate counsel was ineffective. (ECF No. 1 at 14). However, Petitioner does not proffer any arguments or facts in support of her claim. To the extent Petitioner asserts the same grounds for ineffective assistance of appellate counsel that were raised in the state courts, the Court finds that Petitioner is not entitled to habeas relief.

In her petition in the California Supreme Court, Petitioner argued that appellate counsel was ineffective for failing to raise the issues set forth in her habeas petition and for failing to raise issues regarding the heroin and burglary prosecution, which resulted in disproportionate sentence and restitution that violated the Eighth Amendment. (LD 11). The California Supreme Court summarily denied this claim, and there is no reasoned state court decision on this claim. The Court presumes that the state court adjudicated the claim on the merits. See <u>Johnson</u>, 568 U.S. at 301. Accordingly, AEDPA's deferential standard of review applies, and the Court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

As noted by Respondent, "[a]ppellate jurisdiction is limited to the four corners of the record on appeal." <u>In re Carpenter</u>, 9 Cal. 4th 634, 646 (Cal. 1995). The California Supreme Court has held that generally "an appellate court will not consider claims of error that could have been—but were not—raised in the trial court." <u>People v. Vera</u>, 15 Cal. 4th 269, 275 (Cal. 1997). Further, "[u]sually ineffective assistance of counsel claims are properly decided in a habeas

corpus proceeding rather than on appeal." <u>People v. Carrasco</u>, 59 Cal. 4th 924, 980 (Cal. 2014) (citing <u>People v. Tello</u>, 15 Cal. 4th 264, 266–267 (Cal. 1997)). In letters to Petitioner, appellate counsel stated, "I have to go by what's in the record, in the transcripts primarily. I know that you know many more facts about your case than are in the record, but I can't include them in my recitations because it's the record that controls." (LD 11; ECF No. 1 at 327). Appellate counsel also informed Petitioner that "no motion to suppress was made. I can only appeal from a denial of a motion to suppress. Otherwise, the issue isn't 'ripe.'" (LD 11; ECF No. 1 at 328). As demonstrated by these letters, appellate counsel was constrained by the trial record and the objections (or lack thereof) that were made in the trial court. Accordingly, appellate counsel was not deficient for failing to raise ineffective assistance of trial counsel, Fourth Amendment challenges, or other issues that relied on evidence outside the trial record.

Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (quoting <u>Jones</u>, 463 U.S. at 751–52). With respect to the alleged excessive restitution, appellate counsel informed Petitioner, "I doubt we can challenge the restitution fine. It can be any amount between $240 and $10,000. The court can calculate various ways. It doesn't have anything to do with the value of the items stolen." (LD 11; ECF No. 1 at 326). Petitioner fails to establish that appellate counsel's performance fell "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, <u>Donald</u>, 135 S. Ct. at 1376, the Court finds that the California Supreme Court's decision denying Petitioner's ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable application of, clearly established federal law. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief for ineffective assistance of appellate counsel.

### C. Third Ground for Relief

In her third ground for relief, Petitioner asserts multiple sub-claims, including: (1) a Miranda violation; (2) unlawful search and seizure of the tote, which was subsequently admitted into evidence; (3) false evidence of heroin; (4) Gempler's testimony and arrest report contained multiple intentional and material false facts; and (5) portions of Gempler's testimony transcript were excised.[11] (ECF No. 1 at 22). Respondent argues that Petitioner's third ground for relief is unexhausted, and in any event, fails to state a colorable claim. (ECF No. 32 at 37).

The sub-claims in Petitioner's third ground for relief were not presented as independent claims to the California Supreme Court. Rather, the issues were incorporated in Petitioner's ineffective assistance of counsel claims. (LD 11). Petitioner's third ground for relief was "not fairly present[ed] . . . to the state court when [s]he merely discussed it as one of several issues which were handled ineffectively by [her] trial and appellate counsel." Rose, 395 F.3d at 1112. Therefore, Petitioner's third ground for relief is unexhausted. However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett, 406 F.3d at 624.

#### 1. *Miranda* Claim

Petitioner asserts that Gempler elicited incriminating statements from her when he questioned Petitioner, who was handcuffed in the back of the squad car, about the items in Flynn's truck without Miranda warnings. (ECF No. 1 at 26). In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that

> when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege . . . . He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the

---

[11] Petitioner also asserts ineffective assistance of counsel, which was addressed in section IV(B), *supra*.

prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 478–79.

In support of this claim, Petitioner cites to Gempler's arrest report and pages 5, 8, 122, and 184 of the Reporter's Transcript. (ECF No. 1 at 23, 26). However, the record does not support Petitioner's argument. At the preliminary examination, Gempler testified that he read Petitioner her Miranda rights while she was seated in the back of his patrol vehicle. (RT 8). At trial, Gempler testified that he had Mirandized Petitioner. (RT 182). Also consistent with Gempler's testimony is the arrest report, which stated that Gempler "went over and read Mederios [*sic*] the Miranda Advisement." (ECF No. 1 at 288). As it is "perfectly clear" that Petitioner does not raise a colorable Miranda claim, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

2. Admissibility of the Tote

Petitioner challenges the search of Flynn's truck, specifically the seizure and admission of the tote. (ECF No. 1 at 22–24). "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). See Newman v. Wengler, 790 F.3d 876, 881 (9th Cir. 2015) (noting Stone survived enactment of AEDPA). Thus, the "relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided." Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (citing Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990)); Locks v. Sumner, 703 F.2d 403, 408 (9th Cir. 1983)).

In this case, Petitioner's Fourth Amendment claim could have been litigated in the state trial court, but defense counsel did not file a motion. The Court finds that the state court provided Petitioner with a "full and fair opportunity to litigate" her Fourth Amendment claim, even though

she did not in fact do so.[12] <u>Stone</u>, 428 U.S. at 494. <u>See</u> <u>Gordon</u>, 895 F.2d at 613–14 (holding that the availability to file a suppression motion pursuant to California Penal Code section 1538.5[13] provided opportunity in state court for full and fair litigation of Fourth Amendment claim). As it is "perfectly clear" that Petitioner does not raise a colorable Fourth Amendment claim, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

### 3. Lack of Fingerprint Evidence

Petitioner appears to argue that there was insufficient evidence to support her burglary conviction because her fingerprints were not obtained from the tote or from Timmons's home. (ECF No. 1 at 22). This claim was raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. This claim was not raised in the California Supreme Court, and thus, implicates exhaustion concerns. However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." <u>Cassett</u>, 406 F.3d at 624.

The Supreme Court has held that when reviewing a sufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id.</u> at 326. State law provides "for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." <u>Coleman v. Johnson</u>, 566 U.S. 650, 655 (2012) (quoting <u>Jackson</u>, 443 U.S. at 319).

---

[12] As discussed in section IV(B)(4), *supra*, counsel was not ineffective for failing to file a suppression motion that was not meritorious.
[13] "A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure" on the ground that "[t]he search or seizure without a warrant was unreasonable." Cal. Penal Code § 1538.5(a)(1)(A).

"The elements of first degree burglary in California are (1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony." People v. Sample, 200 Cal. App. 4th 1253, 1261 (Cal. Ct. App. 2011) (citing Cal. Penal Code §§ 459, 460; People v. Anderson, 47 Cal. 4th 92, 101 (Cal. 2009)). The California Supreme Court has adopted a "long-standing rule allowing a jury to infer guilt of a theft-related crime from the fact that a defendant is found in possession of recently stolen property when such evidence is accompanied by slight corroboration of other inculpatory circumstances tending to show guilt." People v. Rogers, 57 Cal. 4th 296, 335 (Cal. 2013) (citing People v. McFarland, 58 Cal. 2d 748, 754–58 (Cal. 1962)). An example of such a corroborative inculpatory circumstance is when "recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession." McFarland, 58 Cal. 2d at 754. Under California law, constructive possession can be established "[w]hen contraband is found in a place to which a defendant and others have access and over which none has exclusive control" and the defendant's conduct showed consciousness of guilt. People v. Hutchinson, 71 Cal. 2d 342, 345 (Cal. 1969). See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

Regarding how Ms. Timmons's tote materialized in the bed of Mr. Flynn's truck, Petitioner testified on direct examination:

> Well at first I thought it was when I was told there was a tote back there. I thought it was from when we gave this other woman [Danielle Hawn] a ride up to the burned-out trailer up the road, to get her belongings on the side of the road. That is where I thought it came from.
>
> But when I found out it belonged to Melody, the only thing I can think of, she must have put it in the back of the truck when she was back there. And just telling us to get out of her driveway. So that is why we got out of her driveway. She was making so much noise and banging stuff around. I don't know what she was doing back there, but she was in the back of the bed of the truck.

(RT168).

On cross-examination, the following exchange occurred:

> Q. Your first story to Deputy Gempler was you obtained the tote from a female you met earlier at Tuolumne Market; is that right?

A. That is what I believed, uh-huh.

Q. Okay. And then your next statement was that you picked it up in the area of North Tuolumne near a burned-up trailer?

. . .

A. Yes. I told—

Q. That was your next story?

A. That was the same story.

Q. Okay. Now this was all after Deputy Gempler told you that it was Miss Timmons' property; isn't that right?

A. No. He didn't tell me it was Miss Timmons' property.

(RT 177–78).

Deputy Gempler was called as a rebuttal witness, and on direct examination he testified:

Q. Okay. So you tell [Petitioner] it is Miss Timmons' tote, and then you say, "How did you come across it" or something along those lines?

A. Correct.

Q. What did she say? What was the first thing she said?

A. She had gotten it from a gal at the Tuolumne Apartments.

Q. Okay. And then did she change that a little bit, or at all?

A. Yes.

Q. Then what did she say?

A. She and a female had been up at . . . a burned-up trailer on North Tuolumne Road, and that is where the tote was located.

Q. And did she change her story throughout, or was this the only time she changed it?

A. The two stories that we talked about previous, she made some—it didn't make sense after a while.

Q. So she kept going on and on?

A. Yes.

Q. And all this was after you told her it was Miss Timmons' tote?

A. Yes.

38

Q. At any time, did she ever say, "Hey, Miss Timmons was in the back of this truck"?

A. No.

Q. And did you give her the opportunity to say—to tell you that?

A. Yes. I had Mirandized her and asked her for a statement.

Q. And never mentioned this about Miss Timmons—the Miss Timmons we saw yesterday—jumping into the back of that lifted-up pickup?

A. Correct.

(RT 181–82).

Viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, the Court finds that Petitioner is not entitled to habeas relief. A rational trier of fact could conclude that Petitioner's multiple explanations regarding Ms. Hawn and Ms. Timmons were false statements that demonstrated consciousness of guilt. The lack of fingerprint evidence does not exonerate Petitioner, and the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt," Jackson, 443 U.S. at 326. As it is "perfectly clear" that Petitioner does not raise a colorable federal claim regarding the lack of fingerprint evidence, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

4. Alleged Heroin Evidence

Petitioner asserts that false evidence of heroin was used to convict her of bringing a controlled substance into jail. (ECF No. 1 at 22). As discussed in section IV(A)(3), *supra*, on the first day of trial, the court dismissed the heroin possession charge (count II) on the prosecution's motion. (CT 21; RT 39). No evidence of heroin was presented at trial. The only drug evidence presented at trial concerned marijuana. (RT 109–11, 132–34, 175–76). In his opening statement, the prosecutor explained the offense for which Petitioner was charged as "bringing marijuana into the jail." (RT 58). In closing argument, the prosecutor noted that the parties stipulated that the substance "was, in fact, marijuana, and it was in a usable amount." (RT 229). As it is "perfectly clear" that Petitioner does not raise a colorable federal claim regarding the use of false heroin evidence, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

///

### 5. Deputy Gempler's Testimony

Petitioner asserts that Deputy Gempler presented hearsay statements in his testimony. Specifically, Petitioner challenges Deputy Gempler's testimony "of being summoned to a report of Burglary initiated by Ms. Timmons who 'Reported several boxes of clothes' stolen from inside her house and naming Petitioner as 'suspect.'" (ECF No. 1 at 23). First, the source of the alleged hearsay statements, Ms. Timmons, testified at trial. Second, as Deputy Gempler's testimony was not used to establish the truth of Ms. Timmons's report of burglary but to explain Gempler's course of conduct while he was investigating the incident at Ms. Timmons's residence, the statements at issue did not constitute hearsay. See United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991) ("We find that the statement properly was treated as non-hearsay because it was not introduced for the truth of the matter asserted. . . . Rather, it was introduced to show the effect on the listener[.]").

Petitioner also asserts that Deputy Gempler's "testimony was perjured, contradictory and proven false." (ECF No. 1 at 22). "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). Here, however, Petitioner has not established that Deputy Gempler's testimony was false or that the prosecution knew or should have now that his testimony was false. See Jackson v. Brown, 513 F.3d 1057, 1071–72 (9th Cir. 2008) (citation omitted) ("A claim under Napue will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'"). Petitioner argues that Gempler's testimony was contradicted by Ms. Timmons's testimony. Such contradictions do not necessarily establish that Gempler's testimony was false. It was the responsibility of the jury to determine what conclusions should be drawn from any conflicting testimony. Petitioner also argues that certain parts of Gempler's testimony were not corroborated by Mr. Flynn. (ECF No. 1 at 25). However, lack of corroborating testimony does not necessarily establish that Gempler's testimony was false.

As it is "perfectly clear" that Petitioner does not raise a colorable federal claim with respect to Deputy Gempler's testimony, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

6. Transcript

Petitioner asserts that parts of Deputy Gempler's and Ms. Timmons's testimony were excised from the Reporter's Transcript. (ECF No. 1 at 22, 29) (citing RT 14). Petitioner merely surmises that the ellipsis on page 14 of the Reporter's Transcript were portions of testimony that were "not clearly understood by Stenographer." (ECF No. 1 at 29). However, Petitioner has not provided this Court with any evidence to substantiate her allegations. Additionally, an ellipsis can indicate a pause rather than an omission of words. Merriam-Webster Dictionary, Ellipsis, https://www.merriam-webster.com/dictionary/ellipsis (last visited Feb. 6, 2018). As it is "perfectly clear" that Petitioner does not raise a colorable federal claim regarding alleged excising of the Reporter's Transcript, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

**D. Fourth Ground for Relief**

In her fourth ground for relief, Petitioner asserts various claims of prosecutorial misconduct. (ECF No. 1 at 5, 38–44). Respondent argues that Petitioner's fourth ground for relief is procedurally barred, unexhausted, and fails to raise a colorable claim. (ECF No. 32 at 41). Petitioner's prosecutorial misconduct claims were raised in her state habeas petition in the Tuolumne County Superior Court, which denied the claims on procedural grounds. (LDs 7, 8). The prosecutorial misconduct claims also were raised in the California Court of Appeal and the California Supreme Court, which summarily denied the claims. (LDs 9–12). As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Tuolumne County Superior Court. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

1. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and

1  adequate to support the judgment. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729–30 (1991). This

2  doctrine of procedural default is based on the concerns of comity and federalism. <u>Id.</u> at 730–32.

3  However, there are limitations as to when a federal court should invoke procedural default and

4  refuse to review a claim because a petitioner violated a state's procedural rules. Procedural

5  default can only block a claim in federal court if the state court "clearly and expressly states that

6  its judgment rests on a state procedural bar." <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989).

7      Here, the Tuolumne County Superior Court denied Petitioner's prosecutorial misconduct

8  claims because the issue could have been, but was not raised on direct appeal. (LD 8 at 2) (citing

9  <u>In re Harris</u>, 5 Cal. 4th 813, 829 (Cal. 1993), and <u>In re Dixon</u>, 41 Cal. 2d 756, 759 (Cal. 1953)).

10  As the Tuolumne County Superior Court clearly and expressly stated that its judgment rests on a

11  state procedural bar, procedural default is appropriate if the <u>Dixon</u> rule is independent and

12  adequate. The Supreme Court has held that the <u>Dixon</u> rule "qualifies as adequate to bar federal

13  habeas review." <u>Johnson v. Lee</u>, 136 S. Ct. 1802, 1806 (2016). Accordingly, the Court finds that

14  the Tuolumne County Superior Court expressly invoked an independent and adequate procedural

15  rule in California, commonly referred to as the <u>Dixon</u> rule, and Petitioner has procedurally

16  defaulted her prosecutorial misconduct claims. A petitioner "may obtain federal review of a

17  defaulted claim by showing cause for the default and prejudice from a violation of federal law."

18  <u>Martinez v. Ryan</u>, 566 U.S. 1, 10 (2012) (citing <u>Coleman</u>, 501 U.S. at 750). In any case,

19  Petitioner's claims are without merit.[14]

20      2.  <u>Legal Standard</u>

21      "[P]rosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the

22  resulting conviction a denial of due process.'" <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987) (second

23  alteration in original) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). "To

24  constitute a due process violation, the prosecutorial misconduct must be 'of sufficient

---

25  [14] "Procedural bar issues are not infrequently more complex than the merits issues . . . so it may well make sense in

26  some instances to proceed to the merits if the result will be the same." <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232
    (9th Cir. 2002) (citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997)). Accordingly, the Court will proceed to

27  address Petitioner's claims on the merits. "Where, as here, the state Supreme Court has denied postconviction relief
    due to procedural default, we review a defendant's habeas claims de novo." <u>Allen v. Benedetti</u>, 629 F. App'x 814,
    815 (9th Cir. 2015) (citing <u>Chaker v. Crogan</u>, 428 F.3d 1215, 1221 (9th Cir. 2005)), <u>cert. denied sub nom. Allen v.</u>

28  <u>Baca</u>, 137 S. Ct. 1063 (2017).

significance to result in the denial of the defendant's right to a fair trial.'" Greer, 483 U.S. at 765 (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

### 3. Display of Jury Instructions During Closing Argument

Petitioner asserts that the prosecutor engaged in misconduct when he "illegally displayed selected Jury instructions improperly relieving from burden of proof." (ECF No. 1 at 39). Petitioner appears to challenge the prosecutor's use of instruction 225 on circumstantial evidence and instruction 376 on possession of recently stolen property as evidence of a crime. (Id.) (citing RT 221–22, 226–27). Petitioner does not argue that these instructions are erroneous. Rather, Petitioner takes issue with the prosecutor selectively displaying certain instructions during closing argument, which allegedly resulted in relieving the prosecution from proving its case beyond a reasonable doubt. However, the prosecutor commenced his closing argument by stating, "I have the burden of proof—and the Judge read you the burden of proof. That is beyond a reasonable doubt." (RT 218–19). The jury was instructed in pertinent part:

> A defendant in a criminal case is presumed to be innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. . . .
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

(RT 49). The jury also had the instruction for their use during deliberation. (RT 198). The record does not establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct on this ground.

### 4. Evidence that Petitioner Did Not Enter Ms. Timmons's Home

Petitioner asserts that the prosecutor admitted knowledge of exculpatory evidence that Petitioner factually did not enter Ms. Timmons's home and requested that this evidence be excluded. In support of this claim, Petitioner cites to pages 34 and 35 of the Reporter's Transcript. (ECF No. 1 at 40). Contrary to Petitioner's allegations, the prosecutor stated, "*my*

*understanding* is Mr. Flynn will essentially testify he never saw the defendant go into Miss Timmons' home." (RT 34) (emphasis added). And as discussed in section IV(A)(3), *supra*, there was no stipulation to exclude Mr. Flynn from testifying. Based on the foregoing, the record does not establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct on this ground.

### 5. Improper Statements During Closing Argument

Petitioner asserts that the prosecutor engaged in misconduct for the following statement made during his closing argument: "And use the surrounding circumstances, again, because it is not an isolated, 'Did anybody see her go in?' because no, there is no evidence that somebody saw her go in. The evidence is the property was there, then it was gone, and she had it. Right?" (RT 228). Petitioner argues that the prosecutor improperly instructed the jury to use guesswork to obtain a conviction. (ECF No. 1 at 41). Petitioner also asserts that the prosecutor engaged in misconduct when he told the following story during closing argument:

> It is two dogs, and—in a dog house talking to each other. One dog says to the other, "You know, Spot was here and you had five bones and now Spot is gone and you have four bones. It doesn't take Lassy [*sic*] to figure this one out" right? The tote was in the house, then the tote was gone, and it was found in her possession.

(RT 239–40).

"The government's closing argument is that moment in the trial when a prosecutor is compelled to reveal her own understanding of the case as part of her effort to guide the jury's comprehension." Gautt v. Lewis, 489 F.3d 993, 1013 (9th Cir. 2007). Here, the prosecutor's acknowledgement that there was no direct evidence of Petitioner entering Ms. Timmons's residence does not amount to encouraging the jury to convict Petitioner without evidence. Rather, the prosecutor was arguing that although there was no direct evidence, the jury could infer from the circumstantial evidence presented at trial that Petitioner committed the offense. Similarly, the story of the dogs was an example to illustrate California's rule allowing a jury to consider possession of recently stolen property as evidence of a crime.

///

The record does not establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citation omitted) (As "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally condemned."). Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct on this ground.

### 6. PowerPoint

Petitioner challenges the prosecutor's use of a PowerPoint slide as "evidence" during closing argument. The slide allegedly displayed against a dark background Petitioner's name in white letters being repeatedly consumed with flames and melting into a large and flashing "guilty." (ECF No. 1 at 40). The PowerPoint slide is not in the record before this Court, and Petitioner has not provided any evidence to substantiate her allegations. In addition, the jury was instructed, "Nothing the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." (RT 200). The record does not establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct on this ground.

### 7. Discussion of Petitioner's Prior Convictions

Petitioner asserts that the prosecutor intentionally deprived her of a fair trial by mentioning Petitioner's prior convictions. (ECF No. 1 at 40–41). As set forth in section IV(B)(7)(b), *supra*, "criminal defendants are not entitled to a false aura of veracity when they take the stand." Portillo, 633 F.2d at 1322. "When an accused elects to become a witness and testify in his own behalf, 'his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness.'" Id. (quoting Reagan, 157 U.S. at 305).

> A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991). In such cases, "we must rely on the jury to sort [the inferences] out in light of the court's instructions." Id. Admission

of evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw" from it. Id.

Boyde, 404 F.3d at 1172.

The jury could draw permissible inferences from the prior conviction evidence given that Petitioner testified at trial and thus, her credibility could be impeached. See, e.g., Spencer v. Texas, 385 U.S. 554, 560–61 (1967) (noting well-established rule that evidence of defendant's prior crimes traditionally has been admitted when defendant testifies and the State seeks to impeach his credibility). Moreover, defense counsel raised Petitioner's prior convictions on direct examination. "[W]here the defendant opens the door to an argument, it is 'fair advocacy' for the prosecution to enter." United States v. Falsia, 724 F.2d 1339, 1342 (9th Cir. 1983). The record does not establish that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. Accordingly, Petitioner is not entitled to habeas relief for prosecutorial misconduct based on this ground.

**E.  Fifth Ground for Relief**

In her fifth ground for relief, Petitioner challenges her fine and sentence as excessive and disproportionate. (ECF No. 1 at 49). Respondent argues that Petitioner's fifth ground for relief is unexhausted, and in any event, fails to state a colorable claim. (ECF No. 32 at 46). The claims in Petitioner's fifth ground for relief were not presented as independent claims to the California Supreme Court. Rather, the issues were incorporated in Petitioner's ineffective assistance of counsel claims. (LD 11). Petitioner's fifth ground for relief was "not fairly present[ed] . . . to the state court when [s]he merely discussed it as one of several issues which were handled ineffectively by [her] trial and appellate counsel." Rose, 395 F.3d at 1112. Therefore, Petitioner's fifth ground for relief is unexhausted. However, pursuant to 28 U.S.C. § 2254(b)(2), the Court may deny an unexhausted claim on the merits "when it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." Cassett, 406 F.3d at 624.

1.  Restitution Fine

In Bailey v. Hill, 599 F.3d 976 (9th Cir. 2010), the Ninth Circuit addressed "whether a challenge to a restitution order by a custodial state prisoner who does not challenge the

lawfulness of his custody under federal law is sufficient for jurisdiction under the federal habeas statute 28 U.S.C. § 2254." 599 F.3d at 980. "Section 2254(a)'s language permitting a habeas petition to be entertained 'only on the ground that [the petitioner] is in custody *in violation of the Constitution or laws or treaties of the United States*,' (emphasis added), explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody." Bailey, 599 F.3d at 980 (quoting Dickerson v. United States, 530 U.S. 428, 439 n. 3 (2000)). A challenge to a restitution order lacks the required nexus to a petitioner's custody because "the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty." Bailey, 599 F.3d at 981. Therefore, the Ninth Circuit "conclude[d] that § 2254(a) does not confer jurisdiction over a state prisoner's in-custody challenge to a restitution order imposed as part of a criminal sentence." Id. at 982.

Petitioner's excessive fine claim is distinguishable from Bailey in that Petitioner also challenges the lawfulness of her custody. However, Bailey noted that its conclusion was reinforced by United States v. Thiele, 314 F.3d 399 (9th Cir. 2002), which "held that a federal prisoner could not, under § 2255, use his physical custody *and the fact that he was seeking release from custody on other grounds* to 'run interference for non-cognizable [restitution] claims.'" Bailey, 599 F.3d at 982 (alteration in original) (emphasis added) (quoting Thiele, 314 F.3d at 402). Bailey found Thiele's reasoning to be applicable because the differences between §§ 2254 and 2255 were immaterial as to the issue of habeas jurisdiction over a restitution order challenge. See also Tuggle v. Campbell, 261 F. App'x 56, 58 (9th Cir. 2007) (citing Thiele, 314 F.3d at 402) (finding in § 2254 proceeding that "[t]he fact that Tuggle seeks release from custody in addition to relief from his fine does not create jurisdiction to review the fine"). Based on Bailey and Thiele, the Court does not have habeas jurisdiction to review Petitioner's challenge to her fine.

Here, Petitioner was ordered to pay a restitution fine of $5,040 pursuant to California Penal Code section 1202.4(b). (CT 43; RT 270). Although reasonable minds could disagree as to the appropriateness of the fine, it is not this Court's purview to second-guess the trial court's determination, which was in compliance with state law. See Cal. Penal Code § 1202.4(b)(1) (In

1  2013, the fine for a person convicted of a felony shall not be less than $240 and not more than

2  $10,000); id. § 1202.4(b)(2) ("In setting a felony restitution fine, the court may determine the

3  amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by

4  the number of years of imprisonment the defendant is ordered to serve, multiplied by the number

5  of felony counts of which the defendant is convicted.").[15]

6      As the Court does not have habeas jurisdiction to review Petitioner's challenge to her

7  fine, Petitioner is not entitled to habeas relief on this ground.

8      2.  Disproportionate Sentence

9      The Eighth Amendment "does not require strict proportionality between crime and

10  sentence but rather forbids only extreme sentences that are grossly disproportionate to the

11  crime." Graham v. Florida, 560 U.S. 48, 60 (2010) (internal quotation marks and citations

12  omitted). See also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) ("The gross disproportionality

13  principle reserves a constitutional violation for only the extraordinary case."). The Supreme

14  Court has cautioned that "federal courts should be 'reluctan[t] to review legislatively mandated

15  terms of imprisonment,' and that 'successful challenges to the proportionality of particular

16  sentences' should be 'exceedingly rare.'" Hutto v. Davis, 454 U.S. 370, 374 (1982) (quoting

17  Rummel v. Estelle, 445 U.S. 263, 274, 272 (1980)).

18      Here, Petitioner was convicted of first-degree residential burglary (count 1) and bringing

19  a controlled substance into a jail (count 3). (CT 30, 32). Petitioner admitted allegations that she

20  had a prior felony conviction that qualified as both a prior serious felony and a strike.[16] (RT 248–

21

22  [15] Petitioner argues that the fine is unlawful because the court failed to state its reasons for imposing such an amount
and did not hold a hearing regarding Petitioner's ability to pay. (ECF No. 37 at 29). However, the California Penal

23  Code provides that "[e]xpress findings by the court as to the factors bearing on the amount of the fine shall not be
required. A separate hearing for the fine shall not be required." Cal. Penal Code § 1202.4(d). Additionally, a

24  "defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a
restitution fine. Inability to pay may be considered only in increasing the amount of the restitution fine in excess of

25  the minimum fine . . . ." Id. § 1202.4(c).

[16] To the extent Petitioner argues that trial counsel was ineffective for admitting the prior conviction and failing to

26  object to use of the prior conviction at sentencing, the Court finds Petitioner is not entitled to habeas relief. The state
court's determination that "[i]t was absolutely proper for counsel to recommend admitting the strike to prevent it

27  from being submitted in evidence to the jury" was not contrary to, or an unreasonable application of, clearly
established federal law. See Donald, 135 S. Ct. at 1376 ("[F]or claims of ineffective assistance of counsel . . .

28  AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the
benefit of the doubt.'").

48

51). Petitioner was sentenced to an imprisonment term of eleven years, "consisting of the following: on count 1, the two-year lower term, doubled pursuant to the three strikes law for a total of four years; one year on count 3, doubled pursuant to the three strikes law, for a total of two years; and five years on the prior serious felony enhancement." Medeiros, 2014 WL 3729342, at *1 (citations omitted). Petitioner was convicted of felonies and sentenced to legislatively mandated terms of imprisonment. Petitioner has failed to demonstrate that her sentence constitutes an extraordinary case for which the disproportionality principle reserves a constitutional violation. See Rummel, 445 U.S. at 274 ("[O]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative."). As it is "perfectly clear" that Petitioner does not raise a colorable Eighth Amendment claim, the Court may deny this claim on the merits pursuant to 28 U.S.C. § 2254(b)(2).

## F. Certificate of Appealability

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. See Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issues presented are deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

///
///
///
///
///
///
///
///
///

# V.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is DIRECTED to CLOSE the case; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: __February 13, 2018__

_____
UNITED STATES MAGISTRATE JUDGE